# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUNG DUONG NGUON, | CV F   04 5079 AWI SMS P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS REGARDING MOTION FOR SUMMARY JUDGMENT (Doc. 67-1 ) |
| M. CLARK, et. al., | |
| Defendants. | |

_____/

Hung D.  Nguon ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Plaintiff filed the instant action on December 17, 2003, in the U.S. District Court for the Central District of California.  The action was transferred and received in this Court on January 14, 2004.

On October 4, 2006, Defendants filed a Motion for Summary Judgment.  Plaintiff filed an Opposition to the Motion  on October 23, 2006.

## A.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

1   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

2   burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be

3   made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions

4   on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and

5   upon motion, against a party who fails to make a showing sufficient to establish the existence of

6   an element essential to that party's case, and on which that party will bear the burden of proof at

7   trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the

8   nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a

9   circumstance, summary judgment should be granted, "so long as whatever is before the district

10  court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

11  satisfied."  Id. at 323.

12      If the moving party meets its initial responsibility, the burden then shifts to the opposing

13  party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

14  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

15      In attempting to establish the existence of this factual dispute, the opposing party may not

16  rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the

17  form of affidavits, and/or admissible discovery material, in support of its contention that the

18  dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must

19  demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

20  suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W.

21  Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that

22  the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for

23  the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

24      In the endeavor to establish the existence of a factual dispute, the opposing party need not

25  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

26  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

27  trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

28  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

1  |  Matsushita, 475 U.S. at 587 (*quoting* Fed. R. Civ. P. 56(e) advisory committee's note on 1963

2  |  amendments).

3  |  In resolving the Motion for Summary Judgment, the Court examines the pleadings,

4  |  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

5  |  any.  Rule 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at

6  |  255, and all reasonable inferences that may be drawn from the facts placed before the court must

7  |  be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (*citing* United States v.

8  |  Diebold, Inc., 369 U.S. 654, 655 (1962)(*per curiam*).  Nevertheless, inferences are not drawn out

9  |  of the air, and it is the opposing party's obligation to produce a factual predicate from which the

10  |  inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D.

11  |  Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

12  |  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

13  |  show that there is some metaphysical doubt as to the material facts.  Where the record taken as a

14  |  whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

15  |  issue for trial.'"  Matsushita, 475 U.S. at 587 (*citation omitted*).

16  |  **B.  UNDISPUTED FACTS**[1]

17  |  1.  On September 16, 2001, Officer Clark was assigned to work in the control tower on

18  |  Delta Yard in Building 4, at the California Substance Abuse and Treatment Facility

19  |  (CSATF), by the watch sergeant.

20  |  2.  Defendant Clark had no control over the assignment he received that day, and was

21  |  required to work in the tower at that time because no relief was available.

22  |  3.  The dayroom of Building 4 at CSATF is a section of open space in front of the cells,

23  |

24  |  [1]The following facts are undisputed for the purpose of this Motion. Although Plaintiff submitted a Statement of Undisputed Facts, much of the Statement concerns his medical care.  However, as is evidenced by the Court docket, the Court found that the Complaint stated only a cognizable claim for failure to protect as alleged against Defendants Clark, Rainey and McKain. (Doc. 12.)  The Court dismissed the Complaint and allowed Plaintiff to either amend or indicate his desire to move forward with the cognizable claim for relief.  On June 1, 2005, Plaintiff informed the Court that he wished to proceed solely with the claim found cognizable by the Court - the Eighth Amendment failure to protect claim against Defendants Clark, Rainey and McKain.  (Doc. 13.)  The Court thus issued Findings and Recommendations dismissing all but the cognizable claim and the Findings were adopted by the District Court on July 27, 2005.  (Docs. 14, 19.)  In light of the above, the Court includes only those facts that are undisputed and that concern the Eighth Amendment claim at issue in this case.

closest to the front of the building.

4. The control tower in Building 4 is designed to provide a view of the cells, the dayroom floor, and the yard.

5. In the middle of the control tower is a control panel. When standing at the back of the control tower, near the entrance door, the control panel blocks the view of a portion of space in front of the control tower.

6. On September 16, 2001, after he had locked up Building D-3, Officer McKain proceeded to Building 4, to return the inmates to their cells after the evening meal.

7. Officer McKain was standing at the back of the control tower talking with Officers Rainey and McKain as the inmates began returning from the evening meal.  Officer Clark was also observing the inmates entering the building through the entrance.

8. Officers McKain and Rainey were standing outside Building 4 near the entrance as the inmates entered Building 4 on return from the evening meal.

9. Officers Rainey and McKain were waiting for the inmates pass through the door so they could enter the dayroom behind them.

10. From Officer Rainey's vantage point he did not have a direct line of sight into Building 4.

11. After approximately 10 to 20 inmates had entered the building, they began to hear inmates shouting "man down" inside the building.

12. Officer McKain and Officer Rainey quickly entered the building when they heard the inmates shouting "man down."

13. As the tower officer, Officer Clark was required to remain in the tower.

14. When they entered the building, Officer Rainey and Officer McKain observed inmate Nguon lying on the floor, bleeding from the nose and mouth.

15. Inmate Nguon appeared to be unconscious.

16. Prior to hearing the call "man down" Officer Clark did not observe any disturbance, or any inmates involved in an altercation.

17. After he heard someone yell "man down," Officer Clark ran to the front of the tower

4

windows where he observed inmate Nguon lying on the ground.

18. As Officer Rainey and Officer McKain entered the building, they heard several inmates shout, "he had a seizure."

19. Officers Rainey, McKain and Clark all remember the loud siren that indicates an officer has pushed his personal alarm sounding immediately.

20. None of the three officers remember which one of them activated their personal alarm.

21. It is possible that all three activated their alarms at the same time.

22. Officer Rainey used his institutional radio to notify Delta medical staff that there was a medical emergency in Building 4.

23. Medical staff arrived, evaluated Nguon, and removed him from the building for medical treatment.

24. Officer McKain was informed by the sergeant on duty that Nguon was assaulted.

25. Officer Rainey and Officer McKain checked the inmates in Building 4 for cuts or scrapes on their hands that could indicate that they were involved in an assault, but no cuts or scrapes were found.

26. At no time did any of the three officers observe anyone assaulting inmate Nguon.

27. Inmate Nguon contends that he did not see the inmate who struck him.  After returning from the evening meal on September 16, 2001, the last thing he remembers is getting close to the entrance of the building.  He does not remember anything else until he awakened in the emergency room.

C. ANALYSIS

   *1. Summary of Complaint*

   Plaintiff states that on September 16, 2001, he was assaulted by inmate Ibarra and that Defendant Clark assisted in the assault by Ibarra because he did not trigger his personal alarm thereby allowing Ibarra to kick, stomp and strike Plaintiff in the legs, torso, face and head and laughed while this was occurring.  Complaint at ¶¶ 14  17, 18, 21.  Plaintiff also alleges that Officers S.  Rainey and McKain arrived at the scene after someone yelled "man down," however,

5

1   they are liable because they "allowed" the assault of Plaintiff on September 16, 2001.  Id. at ¶ 23.

2         **2.  *Claim for Relief***

3         Prison officials have a duty to take reasonable steps to protect inmates from physical

4   abuse.  Hoptowit v. Ray, 682 F.2d at 1250-51; Farmer v. Brennan, 511 U.S. 825, 833 (1994).  To

5   establish a violation of this duty, the prisoner must demonstrate that prison officials were

6   "deliberately indifferent to a serious threat to the inmates's safety."  Farmer v. Brennan, 511 U.S.

7   at 834.  The deliberate indifference standard involves an objective and a subjective prong.  First,

8   the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer v. Brennan,

9   511 U.S. at 834 (*citing* Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, the prison official

10  must "know of and disregard an excessive risk to inmate health or safety." Id. at 837.

11        Here, Defendants provide evidence that Defendants Rainey and McKain, who were

12  standing near the Building 4 entrance as inmates entered, became aware of the incident involving

13  Plaintiff when they heard someone shouting  "man down." (Rainey Decl., ¶ 4; McKain Decl., ¶

14  5.)  Defendants Rainey and McKain ran into the building where they saw Plaintiff lying on the

15  floor unconscious.  (Rainey Decl., ¶¶ 4, 5; McKain Decl., ¶ 6.)  Both Defendants testified that

16  they recalled hearing a siren which indicates that a Officer has pushed his personal alarm.

17  (Rainey Decl., ¶7; McKain Decl., ¶ 8.)  Neither Defendant personally observed the attack on

18  Plaintiff.  (Rainey Decl., ¶11; McKain Decl., ¶ 11.)

19        Defendant Clark testified that on the date of the incident, he was assigned to work in the

20  Control Booth. (Clark Decl., ¶ 3.)  Within the control booth is the control panel which occupies

21  the front area of the control booth and blocks the view of the area in front of the control panel

22  when a person is standing at the back of the tower. (Clark Decl., ¶ 5.)  Defendant Clark testified

23  that at the time of the incident, he was standing at the back of the control tower talking with

24  Officers Rainey and McKain as the inmates were returning to the building from the evening

25  meal.  (Clark Decl, ¶ 6.)  Like Defendants Rainey and McKain, Defendant Clark was watching

26  the inmates as they returned to the building.  Id.  Defendant Clark also heard several inmates yell

27  "man down," however, he did not personally observe any type of disturbance.  (Clark Decl., ¶¶ 9,

28  13.)  Defendant Clark then ran to the front of the control booth and observed Plaintiff lying on

1   the ground, however, as the tower officer, he was required to remain in the tower.  (Clark Decl.,

2   ¶¶ 9, 11.)  Defendant Clark also recalled hearing the siren that indicated an officer has pushed his

3   personal alarm. (Clark Decl., ¶ 10.)  Defendant Clark could not recall whether he or Officers

4   Rainey or McKain pushed the personal alarm.  (Clark Decl. at ¶10.)

5         The Court finds that Defendants have met their initial burden of informing the Court of

6   the basis for their Motion, and identifying those portions of the record which they believe

7   demonstrate the absence of a genuine issue of material fact.  The burden therefore shifts to

8   Plaintiff to establish that a genuine issue as to any material fact actually does exist.  <u>See</u>

9   <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

10         As stated above, in attempting to establish the existence of this factual dispute, Plaintiff

11   may not rely upon the mere allegations or denials of his pleadings, but is required to tender

12   evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

13   support of its contention that the dispute exists.  Rule 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11;

14   <u>First Nat'l Bank v. Cities Service. Co.</u>, 391 U.S. 253, 289 (1968); <u>Strong v. France</u>, 474 F.2d 747,

15   749 (9th Cir. 1973).

16         In his Opposition, Plaintiff merely alleges that Defendant Clark knew Plaintiff was being

17   assaulted but chose not to activate his personal alarm.  However, Plaintiff fails to present

18   evidence to this effect.  Plaintiff testified that the last thing he remembered was getting close to

19   the building and then waking up in the ER room.  (Pl.'s Dep. at 16:19-24.)  Plaintiff further

20   testified that his conclusion that Defendant Clark did not activate his alarm is not based on

21   personal knowledge but on what other inmates told him. (Pl.'s Dep. 26: 14-18.)  In support of his

22   allegations, Plaintiff attaches to his Complaint the affidavits of inmates Robert Flores and E.

23   Diaz.

24         Inmate Flores states that while returning from the evening meal he witnessed another

25   inmate attack Plaintiff from behind.  (Flores Aff. at 1.)  Inmate Flores saw inmate Diaz looking

26   around for a Correctional Officer and then looked up to the control tower to see Defendant Clark

27   laughing.  <u>Id</u>.  Inmate Flores then saw inmate Diaz yell "man down." <u>Id</u>. at 2.

28         Inmate Diaz also submitted an affidavit wherein he states that he witnessed another

1    inmate hit Plaintiff on the back of the head causing him to fall to the ground unconscious. (Diaz

2    Aff. at 1.)  Inmate Diaz immediately began to look around for an Officer, could not find one and

3    then looked up to the control tower to see Defendant Clark laughing. (Diaz Decl. at 2.)  Diaz then

4    began to yell "man down."  Defendants Rainey and McKain appeared at the scene and a siren

5    sounded.  (Diaz Decl. at 2.)

6         The Court finds the affidavits submitted by Plaintiff are insufficient to create a disputed

7    issue of material fact as to Defendant Clark.  Both affidavits state only that these individuals saw

8    Defendant Clark laughing.  Neither individual has testified that they witnessed Defendant Clark

9    laughing while looking at Plaintiff during the altercation.  The evidence before the Court

10   establishes that Defendant Clark was standing at the back of the control tower speaking to

11   Defendants Rainey and McKain.  Defendant Clark's location is corroborated by Defendant

12   McKain's Declaration that he and Defendant Rainey were speaking to Officer Clark as the

13   inmates entered Building 4. From this location in the control booth, Defendant Clark could not

14   see the area below the control panel.  Plaintiff's evidence establishes that this is the very area

15   where Plaintiff was attacked and fell to the floor unconscious.  (Diaz Decl. at 1; Flores Decl. at

16   1.)  Defendant Clark also testified that he unaware of any incident until he heard someone yell

17   "man down."  After hearing "man down," Clark went to the front of the control booth and saw

18   Plaintiff lying on the ground.  Based on the above, Plaintiff fails to establish that Defendant

19   Clark knew he was at risk.

20        The affidavits provided are also insufficient to establish that Defendant Clark disregarded

21   a serious risk to his safety by failing to push his personal alarm.  Plaintiff reaches this conclusion

22   solely on the basis that Defendant Clark was observed laughing.  Defendant Clark testified,

23   however, that he did not personally observe the attack on Plaintiff, that he heard someone yell

24   "man down" and then immediately ran to the front of the control booth where he looked out and

25   saw Plaintiff lying on the ground.  Defendant Clark also testified that he could not recall who

26   pushed the personal alarm but that it is possible that all three Defendants activated it at the same

27   time. Other than Plaintiff's conclusory statement, there is no evidence before the Court to

28   establish that Defendant Clark disregarded a serious risk to Plaintiff's safety.

1   The affidavits provided also do not created a disputed issue of fact as to Defendants

2   Rainey and McKain who also testified that they were unaware of an attack on Plaintiff until such

3   time as they heard someone yell "man down." At this point, both Defendants Rainey and

4   McKain ran into the dayroom and saw Plaintiff lying on the ground. Defendant Rainey then used

5   his institutional radio to summon emergency medical help.

6   Based on the evidence cited above, the Court finds that Plaintiff has failed meet his

7   burden in establishing the existence of a disputed issue of material fact that the named

8   Defendants knew of and disregarded a serious risk to Plaintiff's safety.

9   **D. CONCLUSION AND RECOMMENDATION**

10   Accordingly, the Court RECOMMENDS that the Motion for Summary Judgment be

11   GRANTED and the case DISMISSED.

12   The Court ORDERS that these Findings and Recommendations be submitted to the

13   United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C.

14   § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District

15   Court, Eastern District of California. Within THIRTY (30) days after being served with a copy

16   of these Findings and Recommendations, any party may file written Objections with the Court

17   and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate

18   Judge's Findings and Recommendations." Replies to the Objections shall be served and filed

19   within TEN (10) court days (plus three days if served by mail) after service of the Objections.

20   The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).

21   The parties are advised that failure to file Objections within the specified time may waive the

22   right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

23

24

25   IT IS SO ORDERED.

26   **Dated:   December 6, 2006**              **/s/ Sandra M. Snyder**
     icido3                          UNITED STATES MAGISTRATE JUDGE

27

28